UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **JOE D'AMBROSIO,** | : | **Case No.  1:00-CV-2521** |
| **Petitioner,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| **MARGARET BAGLEY, Warden,** | : | **MEMORANDUM AND ORDER** |
| **Respondent.** | : | |

Before the Court is Petitioner Joe D'Ambrosio's Motion for Relief from Judgment, filed under Federal Rule of Civil Procedure 60(b).  (Doc. 251.)  In his motion, D'Ambrosio asks this Court to vacate its April 27, 2009 Order  (Doc. 243).  Ultimately, it is D'Ambrosio's hope that the Court will enter a new, broader, order barring his reprosecution in this capital case.  The Respondent, Margaret Bagley, and the Intervenor, the Cuyahoga County Prosecutor's Office (collectively, the "State") filed a joint brief in opposition to D'Ambrosio's motion (Doc. 253), and D'Ambrosio filed a reply to the State's brief (Doc. 255).

This matter is currently pending on appeal before the United States Court of Appeals for the Sixth Circuit.  Consequently, the Court is without jurisdiction to resolve this matter.  Nevertheless, for reasons more fully explained below, the Court now **CERTIFIES**, "pursuant to *First Nat'l Bank of Salem, Ohio v. Hirsch*, 535 F.2d 343 (6th Cir. 1976), that if the case [is] remanded," *Hadix v. Johnson*, 64 Fed. Appx. 531 (6th Cir. 2003), the Court is inclined to **VACATE** its April 27, 2009 Order (Doc. 243) and **GRANT** D'Ambrosio's Motion for Relief From Judgment (Doc. 251).

## I.   PROCEDURAL HISTORY

This case has a lengthy history that is discussed in detail in this Court's prior rulings.  (*See* Docs. 193, 243.)  The Court, accordingly, only provides a broad summary here.

On September 24, 1988, a jogger found the body of Estel Anthony Klann in Doan Creek in Cleveland, Ohio. Shortly thereafter, on October 6, 1988, D'Ambrosio was indicted and charged with aggravated capital murder.  D'Ambrosio pled not guilty to the charges and proceeded to trial before a three-judge panel on February 6, 1989.

On February 21, 1989, largely based on the testimony of co-defendant Edward Espinoza ("Espinoza"), D'Ambrosio was convicted on all counts.  On February 23, 1989, the court sentenced D'Ambrosio to death.  The Ohio Supreme Court upheld the conviction and sentence on appeal.  *State v. D'Ambrosio*, 616 N.E.2d 909 (Ohio 1993).

After his state court appeals and post-conviction efforts concluded, D'Ambrosio filed a notice of intent to file a petition for a writ of habeas corpus with this Court on October 3, 2000.  (Doc. 1.) D'Ambrosio ultimately filed an amended petition that included a claim that the State had withheld material and potentially exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963).  (Doc. 81.) D'Ambrosio also requested and received discovery pertaining to that claim.  (Doc. 102.)

On December 2, 2002, the Court ordered the Cuyahoga County Prosecutor, the Cuyahoga County Coroner, the Cleveland Police Department, and the Cleveland Heights Police Department to provide D'Ambrosio's habeas counsel with materials in their possession. (*Id*.)  After believing he had acquired all Court-ordered discovery, D'Ambrosio filed a motion for summary judgment and a motion for an evidentiary hearing. (Docs. 114, 116.)

On March 24, 2006, the Court issued an Opinion granting D'Ambrosio's petition for a conditional writ of habeas corpus.  (Doc. 194.)  Although the Court found that D'Ambrosio could not demonstrate that he was "probably innocent" under the extraordinarily high standard of review set forth

in *Herrera v. Collins*, 506 U.S. 390 (1993), the Court concluded that a reasonable jury would be less likely to convict D'Ambrosio in light of the withheld evidence.  (*Id.*)

On June 5, 2008, the Sixth Circuit affirmed this Court's ruling.  *See D'Ambrosio v. Bagley*, 527 F.3d 489 (6th Cir. 2008).  The Sixth Circuit, per Judge John M. Rogers, concluded that the evidence withheld by the state "would have substantially increased a reasonable juror's doubt of D'Ambrosio's guilt."  *Id.* at 499.  The opinion explained:

> The evidence that the district court concluded was *Brady* material falls mostly within two broad categories. First, there is evidence that would have contradicted or weakened the testimony of the prosecution's only eyewitness to the murder, Edward Espinoza. . . . Second, there is evidence that demonstrates a motive on the part of another individual, Paul Lewis.

*Id.*

On September 11, 2008, this Court issued an order in compliance with the Sixth Circuit's mandate, stating that, "[t]he [State] shall either: (1) set aside D'Ambrosio's convictions and sentences as to all counts of the indictment, including the sentence of death; or (2) conduct another trial.  This shall be done within 180 days from the effective date of this Order."  (Doc. 209)

In late February 2009, the State produced additional, previously undisclosed, evidence.  (Doc. 243.)  The state trial court, accordingly, declined to permit the trial to proceed until D'Ambrosio had time to examine this new evidence.  (*Id.*)  As a result, the State asked this Court for additional time to retry D'Ambrosio and comply with this Court's order.  (Doc. 211.)  D'Ambrosio not only opposed this motion, but asked the Court to bar his reprosecution.  (Doc. 222.)

On March 6, 2099, the Court extended the 180-day deadline "for the sole purpose of providing all parties a full and fair opportunity to litigate the question of whether this Court should bar a re-trial of this matter after the Court's resolution of the Motion for Extension."  (Doc. 217 at 2.)  The Court barred D'Ambrosio's retrial while the State's Motion for Extension was under consideration.  (*Id.*)

On April 27, 2009, the Court denied the State's Motion.  (Doc. 243.)[1]  Although the Court's reasoning need not be repeated in full here, the Court concluded that the State did not engage in a good-faith effort to comply with the Court's September 11, 2008 Order.  (*Id*.)  The Court issued an unconditional writ of habeas corpus, ordered D'Ambrosio's release from custody, and ordered expungement of D'Ambrosio's conviction and sentence.  (*Id*.)

The State did, however, prevail on two key issues in the April 27, 2009 Order.  First, the Court declined to bar reprosecution.  (*Id*.)  Although the Court concluded that reasonable minds could disagree with its determination on this point (Doc. 250), it found that, despite the repeated discovery abuses by the State, an order barring retrial would not be an appropriate exercise of this Court's discretion.  (Doc. 243.)  This conclusion rested primarily on the determination that D'Ambrosio was not materially prejudiced by the additional delay occasioned by the State's then-recent discovery violations.  (*Id*.)

Second, this Court stayed the issuance of the unconditional writ for 15 days.  The purpose of the stay was to allow the State an opportunity to determine whether it wished to retry D'Ambrosio under the original indictment, and, if so, to seek D'Ambrosio's detention or the imposition of bond conditions in connection therewith.  The State took no action during this 15-day period to either release D'Ambrosio from his conditions of detention or rearraign him.  (*See* Doc. 4 at n.3.)

On April 26, 2009, one day <u>prior</u> to this Court's order authorizing D'Ambrosio's reprosecution and 47 days after what would have been the expiration of this Court's 180-day mandate had the Court not granted the March 6, 2009 extension, Espinoza died.  (Doc. 243-1.)  The State did not inform D'Ambrosio of Espinoza's death until late July 2009.  The State never informed the Court of Espinoza's passing.

---

[1] The Court initially issued an order denying the State's motion on April 24, 2009, but vacated that order and entered the relevant order on April 27, 2009.

On August 14, 2009, D'Ambrosio filed the instant motion, asking the Court to vacate its April 27 Order and enter a new order barring any reprosecution in connection with Klann's murder.  (Doc. 243.)  On September 11, 2009, the State filed its responsive brief (Doc. 253), and on September 28, 2009, D'Ambrosio filed a reply to the State's response (Doc. 255).  On October 6, 2009, the Court heard oral argument on this matter.

## II.    ARGUMENT

D'Ambrosio advances a two-pronged argument in support of his contention that this Court should prevent the state from attempting to again prosecute him for Klann's murder.  First, D'Ambrosio argues that his defense has been materially prejudiced by the State's failure to prosecute him within the original 180 day time limit because of Espinoza's death.[2]  As D'Ambrosio's counsel framed this issue during oral argument:

> [T]he whole key to our defense is the setup, is the setup of Espinoza during his examination.  We can't do that without him present. . . . The issue is, can I effectively use the Brady evidence that the state withheld in 1988 to defend D'Ambrosio at trial.  And the answer to that is no, not without an Espinoza examination at trial. . . . I don't mean to say the same thing over and over, but the only reason we're in this position is because he wasn't tried within 180 days as this Court ordered.  That is the only reason we're faced with this.  It is the only reason why we can't pursue the defense theory that we want to pursue.  That's it.

(10/6/09 Hrg. Tr. at 24:3-25:11.)  Second, D'Ambrosio asserts that Rule 60(b) authorizes this Court to vacate its prior judgment under any of three subsections – Rule 60(b)(2), Rule 60(b)(5), or Rule 60(b)(6) – and that the Court should do so.  Once the Court has done this, D'Ambrosio argues, the Court should enter a new judgment that both declines to extend the State's time to comply with the writ <u>and</u> bars his reprosecution.  D'Ambrosio argues that the Court has jurisdiction to do this, both because Espinoza was

---

[2] D'Ambrosio notes that this time limit was, itself, an accommodation to the State.  *See Pillette v. Berghuis*, 2009 U.S. Dist. LEXIS 91818 ( E.D. Mich. Oct. 2, 2009) ("A conditional writ is essentially an accommodation accorded to the state." (citing *Satterlee v. Wolfenbarger*, 453 F.3d 362, 368 (6th Cir. 2006)).

dead as of the point in time that the Court entered its judgment and because the State took no action

during the 15-day grace period during which the Court stayed the issuance of the unconditional writ:

> I think that the fact that Espinoza died during the time frame in which this Court was considering the issue of the bar of re-prosecution is persuasive.  Clearly the Court has jurisdiction over the issue of whether or not to bar re-prosecution, no question about it. This Court issued an order on April 27th.  It stayed that order for 15 days.  During that time frame it had jurisdiction over the issue.

> If Espinoza had died at some point in time after that 15 days had expired, I think it's a closer call.  I still think 60(b) provides relief, but I think it is a closer call because we start running into the issue in *Pitchess* of "we're done in habeas," and you start getting closer to the pronouncement in *Pitchess* that we don't want federal courts reaching in and supervising the state court proceedings. . . . [I]t's a question this Court doesn't have to grapple with on this issue, because clearly Espinoza died within the time frame that this Court had jurisdiction and was considering the issue of the bar of re-prosecution.  And clearly Espinoza's death went to the series of facts really that this Court was considering on that issue, the series of facts that at the time led this Court to find that there was no prejudice to D'Ambrosio.  We now have a fact that existed at that time the Court decided the issue that completely suggests the opposite, that D'Ambrosio is prejudiced.

(*Id*. at 14:15-15:15) (emphasis added).[3]

---

[3] D'Ambrosio, indeed, made this argument in somewhat more detail on April 9, 2009, during oral argument on the State's Motion for Extension of time:

> The failure to comply with the conditional writ is the critical distinction, Your Honor, between the cases such as *Pitchess* and *Fisher*, and the cases such as *Satterlee* and the other cases, *Gentry*, that we cite in our brief.  *Pitchess* stands for the unremarkable proposition, Your Honor, that a District Court doesn't have jurisdiction after the state complies with the conditional writ.  In that case the state complied.  In that case the District Court nonetheless tried to oversee the proceedings after the state complied with the conditional writ. . . . In *Fisher*, which is the Sixth Circuit decision from . . . 1985, there, too, the state had complied with the conditional writ.  In fact, in the *Fisher* decision, the Court notes that the state has started the proceedings in compliance with the writ issued by the District Court.  That is completely distinguishable from this case, where it's undisputed and conceded by the state that the conditional writ has not been complied with, and that's the critical distinction here. . . . So when we consider the aspect of whether or not the writ has been complied with, you know, the answer is no. And then the question is, well, now what do we do?

(2/9/09 Hrg. Tr. at 222:14-223:25) (questions omitted).

While the Court will discuss this issue in far greater detail should the Sixth Circuit revive this Court's jurisdiction, D'Ambrosio also argues that these facts differentiate this case from not only *Pitchess v. Davis*, 421 U.S. 482 (1975) and *Fisher v. Rose*, 757 F.2d 789, 790 (6th Cir. 1985), but also

In opposition briefing, the State did not contest any of D'Ambrosio's substantive arguments, but rather advanced purely procedural grounds upon which it asserted this Court should deny relief.[4]  *In other words, the State's briefing does not contest that Espinoza's death materially prejudices D'Ambrosio's defense, or that, had this Court known of Espinoza's death, it should have barred D'Ambrosio's reprosecution in its April 27, 2009 Order*.  Rather, the State argued that Rule 60(b) is an improper vehicle for obtaining relief from that order.[5]  During oral argument, however, the State ultimately contested both prongs of D'Ambrosio's argument.  In light of the important interests at stake in these proceedings, the Court elects to consider those arguments "without reservation."  *Cf. Negron-Almeda v. Santiago*, 528 F.3d 15, 26 (1st Cir. 2008) ("The rule is that if an argument is raised belatedly in the district court but that court, without reservation, elects to decide it on the merits, the argument is deemed preserved for later appellate review.").

### III.  ANALYSIS

The Court does not currently have jurisdiction over this matter, because it is pending on appeal before the Sixth Circuit.  (Docs. 244, 250.)  After a full consideration of the parties' briefs, the oral argument, and governing case law, however, *if* the matter were before it, the Court would be inclined to grant D'Ambrosio's motion, vacate its prior order, and enter a new order that includes a provision barring reprosecution.  *See First Nat'l Bank*, 535 F.2d at 346; *see also Dunham v. United States*, 486

---

*Eddleman v. McKee*, No. 08-1030, 2009 U.S. App. LEXIS 24767 (6th Cir. 2009), putting it squarely within the realm of *Satterlee*, 453 F.3d at 368.  (*See generally* Doc. 262.)

[4] Although the Court discourages litigants from confusing the length of an argument with its strength, the State's 7-page opposition could almost be described as a token response.

[5] While the State said it was asserting "two" procedural arguments, it seems to have made five conceptually distinct procedural assertions: (1) that D'Ambrosio's claim improperly sought relief from only one portion of the Court's judgment; (2) that D'Ambrosio improperly sought prospective relief; (3) that D'Ambrosio's claim was a second or successive habeas petition; (4) that D'Ambrosio's claim was an unexhausted habeas petition; and (5) that one of the three alternative grounds for relief that D'Ambrosio asserted under Rule 60(b) was inapplicable.  These five arguments will be discussed in more detail should the Sixth Circuit elect to remand this case.

F.3d 931, 935 (6th Cir. 2007) ("This court has carved out an exception to this rule that allows a District Court to entertain a motion for relief from judgment after an appeal has been filed if it so chooses." (citing *First Nat'l Bank*, 535 F.2d at 346)); *Hadix*, 64 Fed. Appx. at 531 (6th Cir. 2003) (same); *Cason v. Nissan Motor Acceptance Corp.*, 28 Fed. Appx. 392, 394 n.1 (6th Cir. 2002) (same).  As instructed by the Sixth Circuit, this Court will not articulate its legal analysis in full at this time, and, instead, reserves that analysis for an opinion to issue at a later date if the Sixth Circuit sees fit to reinvest this Court with jurisdiction over this matter.

## IV.    CONCLUSION

Accordingly, the Court now **CERTIFIES**, "pursuant to *First Nat'l Bank of Salem, Ohio v. Hirsch*, 535 F.2d 343 (6th Cir. 1976), that if the case [is] remanded," *Hadix*, 64 Fed. Appx. at 531, the Court is inclined to **VACATE** its April 27, 2009 Order (Doc. 243) and **GRANT** D'Ambrosio's Motion for Relief From Judgment (Doc. 251).


**IT IS SO ORDERED.**

<u>s/Kathleen M. O'Malley</u>
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**


**Dated: November 17, 2009**