**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **JOE D'AMBROSIO,** | : | **Case No.  1:00-CV-2521** |
| **Petitioner,** | : |  |
|  | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : |  |
| **MARGARET BAGLEY, Warden,** | : | **MEMORANDUM AND ORDER** |
| **Respondent.** | : |  |

Before the Court is Petitioner Joe D'Ambrosio's Motion for Relief from Judgment (Doc. 251), filed under Federal Rule of Civil Procedure 60(b).  In this motion, D'Ambrosio asks this Court to vacate its April 27, 2009 Order (Doc. 243).  Ultimately, it is D'Ambrosio's hope that the Court will enter a new, broader, order barring his reprosecution in this capital case.  The Respondent, Margaret Bagley, and the Intervenor, the Cuyahoga County Prosecutor's Office (collectively, the "State") filed a joint brief in opposition to D'Ambrosio's motion (Doc. 253), and D'Ambrosio filed a reply to the State's brief (Doc. 255).

For the following reasons, D'Ambrosio's Motion for Relief from Judgment (Doc. 251) is **GRANTED** under Rule 60(b)(6).  The Court hereby **VACATES** that portion of its April 27, 2009 Judgment (Doc. 243) declining to bar D'Ambrosio's reprosecution.  Accordingly, the now-unresolved portion of the State's Motion for an Extension of Time (Doc. 211) is ripe for adjudication.  The Court **DENIES** that motion (Doc. 211) for the reasons articulated in this Court's April 27, 2009 Order (Doc. 243), and, for the reasons discussed below, **BARS** any attempt to reprosecute D'Ambrosio.

## I.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND

This case has a lengthy history that is discussed in detail in this Court's prior rulings.  (*See* Docs. 193, 243.)[1]  The Court, accordingly, only provides a broad summary here.[2]

On September 24, 1988, a jogger found the body of Estel Anthony Klann in Doan Creek in Cleveland, Ohio.  *D'Ambrosio v. Bagley* ("*D'Ambrosio II*"), 619 F. Supp. 2d 428, 430 (N.D. Ohio 2009).  Shortly thereafter, on October 6, 1988, D'Ambrosio was indicted and charged with aggravated capital murder.  *Id*.  D'Ambrosio pled not guilty to the charges and proceeded to trial before a three-judge panel on February 6, 1989.  *Id*.

On February 21, 1989, largely based on the testimony of co-defendant Edward Espinoza ("Espinoza"), D'Ambrosio was convicted on all counts.  *Id*.  On February 23, 1989, the court sentenced D'Ambrosio to death.  *Id*.  The Ohio Supreme Court upheld the conviction and sentence on appeal. *State v. D'Ambrosio*, 616 N.E.2d 909, 921 (Ohio 1993).

After his state court appeals and post-conviction efforts concluded, D'Ambrosio filed a notice of intent to file a petition for a writ of habeas corpus with this Court on October 3, 2000.  (Doc. 1.) D'Ambrosio ultimately filed an amended petition that included a claim that the State had withheld material and potentially exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963).  (Doc. 81.) D'Ambrosio also requested and received discovery pertaining to that claim.  (Doc. 102.)

On December 2, 2002, the Court ordered the Cuyahoga County Prosecutor, the Cuyahoga County Coroner, the Cleveland Police Department, and the Cleveland Heights Police Department to provide D'Ambrosio's habeas counsel with materials in their possession.  (*Id*.)  After believing he had

---

[1] The Court's March 23, 2006 Order ("*D'Ambrosio I*") (Doc. 193) is also available at 2006 U.S. Dist. LEXIS 12794, and its April 27, 2009 Order ("*D'Ambrosio II*") (Doc. 243) is also available at 619 F. Supp. 2d 428.

[2] Resort to prior orders remains necessary to fully understand this unusually complex action.  *See D'Ambrosio v. Bagley*, 527 F.3d 489 (6th Cir. 2008); *D'Ambrosio II*, 619 F. Supp. 2d 428 (N.D. Ohio 2009); *D'Ambrosio I,* Case No. 00cv2521, 2006 U.S. Dist. LEXIS 12794 (N.D. Ohio March 23, 2006). *D'Ambrosio II* is attached hereto as Appendix 1.

acquired all Court-ordered discovery, D'Ambrosio filed a motion for summary judgment and a motion for an evidentiary hearing. (Docs. 114, 116.)

On March 24, 2006, the Court issued an opinion granting D'Ambrosio's petition for a conditional writ of habeas corpus.  (Doc. 194.)  Although the Court found that D'Ambrosio could not demonstrate that he was "probably innocent" under the extraordinarily high standard of review set forth in *Herrera v. Collins*, 506 U.S. 390 (1993), the Court concluded that a reasonable jury would be less likely to convict D'Ambrosio in light of the withheld evidence.  *See generally D'Ambrosio v. Bagley* ("*D'Ambrosio I*"), Case No. 00cv2521, 2006 U.S. Dist. LEXIS 12794 (N.D. Ohio March 24, 2006).

On June 5, 2008, the Sixth Circuit affirmed this Court's ruling.  *See D'Ambrosio v. Bagley*, 527 F.3d 489 (6th Cir. 2008).  The Sixth Circuit, per Judge John M. Rogers, concluded that the evidence withheld by the state "would have substantially increased a reasonable juror's doubt of D'Ambrosio's guilt."  *Id*. at 499.  The opinion explained:

> The evidence that the district court concluded was *Brady* material falls mostly within two broad categories. First, there is evidence that would have contradicted or weakened the testimony of the prosecution's only eyewitness to the murder, Edward Espinoza . . . . Second, there is evidence that demonstrates a motive on the part of another individual, Paul Lewis.

*Id*.

On September 11, 2008, this Court issued an order in compliance with the Sixth Circuit's mandate, stating that, "[t]he [State] shall either: (1) set aside D'Ambrosio's convictions and sentences as to all counts of the indictment, including the sentence of death; or (2) conduct another trial.  This shall be done within 180 days from the effective date of this Order."  (Doc. 209.)

In late February 2009, the State produced additional, previously undisclosed, evidence.  *D'Ambrosio II*, 619 F. Supp. 2d at 434.  The state trial court, accordingly, declined to permit the trial to proceed until D'Ambrosio had time to examine this new evidence.  *Id*.  As a result, the State asked this

Court for additional time to retry D'Ambrosio and comply with this Court's order. (Doc. 211.) D'Ambrosio not only opposed this motion, but asked the Court to bar his reprosecution. (Doc. 222.)

On March 6, 2009, the Court extended the 180-day deadline set forth in its September 11, 2008 ruling "for the sole purpose of providing all parties a full and fair opportunity to litigate the question of whether this Court should bar a retrial of this matter after the Court's resolution of the Motion for Extension." (Doc. 217 at 2.) The Court barred D'Ambrosio's retrial while the State's Motion for Extension was under consideration. (*Id*.)

On April 27, 2009, this Court denied the State's Motion. *See D'Ambrosio II*, 619 F. Supp. 2d at 460.[3] Although the Court's reasoning is not repeated in full here, the Court concluded that the State did not engage in a good-faith effort to comply with the Court's September 11, 2008 Order when it "did not respond to multiple discovery requests, produced material . . . discovery on the eve of trial, and then sought to interfere with the orderly progress of the trial through gamesmanship . . . ," both before the state court and this one. *Id*. at 455. The Court issued an unconditional writ of habeas corpus, ordered D'Ambrosio's release from custody, and ordered expungement of D'Ambrosio's conviction and sentence. *Id*. at 460.

The State did, however, prevail on two key issues in the April 27, 2009 Order. First, the Court declined to bar reprosecution. *Id*. Although the Court concluded that reasonable minds could disagree with its determination on this point (Doc. 250), it found that, despite the repeated discovery abuses by the State, an order barring retrial would not be an appropriate exercise of this Court's discretion, *D'Ambrosio II*, 619 F. Supp. 2d at 459–60. This conclusion rested primarily on the determination that D'Ambrosio was not materially prejudiced by the additional delay occasioned by the State's then-recent discovery violations. *See id*.

---

[3] The Court initially issued an order denying the State's motion on April 24, 2009, but vacated that order because of technical errors in it, and entered the relevant order on April 27, 2009.

Second, this Court stayed the issuance of the unconditional writ for fifteen days.  *Id*. at 460.  The purpose of the stay was to allow the State an opportunity to determine whether it wished to retry D'Ambrosio under the original indictment, and, if so, to seek D'Ambrosio's detention or the imposition of bond conditions in connection therewith.  *Id*.  The State took no action during this 15-day period to either release D'Ambrosio from his conditions of detention or rearraign him.  (*See* Doc. 250 at 4 n.3.)

On April 26, 2009, Espinoza died.  (Doc. 251-1.)  Thus, Espinoza died one day <u>prior</u> to this Court's Order authorizing D'Ambrosio's reprosecution, a full 16 days prior to the effective date of that order, and 47 days after what would have been the expiration of this Court's 180-day mandate had the Court not granted the March 6, 2009 extension.  The State learned of Espinoza's death on April 30, 2009, but did not inform either D'Ambrosio or the state court of Espinoza's death until late July 2009.  The State never informed this Court of Espinoza's passing.

On August 14, 2009, D'Ambrosio filed the instant motion, asking the Court to vacate its April 27 Order and enter a new order barring any reprosecution in connection with Klann's murder.  (Doc. 251.)  On September 11, 2009, the State filed its responsive brief (Doc. 253), and on September 28, 2009, D'Ambrosio filed a reply to the State's response (Doc. 255).  On October 6, 2009, the Court heard oral argument on this matter.

On November 17, 2009, the Court issued an order explaining that, although it had no jurisdiction over this matter because it was pending before the United States Court of Appeals for the Sixth Circuit, the Court would be inclined to grant D'Ambrosio's motion should the Sixth Circuit choose to exercise its discretion to re-vest this Court with jurisdiction.  (Doc. 263.)  On November 25, 2009, the Sixth Circuit issued an order of remand (Doc. 266-1) and on December 1, 2009, the Sixth Circuit issued its mandate (Doc. 267).

## II.    ARGUMENT

D'Ambrosio advances a two-pronged argument in support of his motion.  First, D'Ambrosio argues that his defense was materially prejudiced by the State's failure to prosecute him within the original 180-day time limit because of Espinoza's death.[4]  Second, D'Ambrosio asserts that, in light of that prejudice, Rule 60(b) authorizes this Court to vacate its prior judgment under any of three subsections – Rule 60(b)(2), Rule 60(b)(5), or Rule 60(b)(6) – and that this Court should do so and then enter a new judgment barring his reprosecution.

In opposition briefing, the State did not contest any of D'Ambrosio's substantive arguments, but, rather, advanced purely procedural grounds upon which it asserted this Court should deny relief.[5]  *In other words, the State's briefing does not contest that Espinoza's death materially prejudices D'Ambrosio's defense, or that, had this Court known of Espinoza's death, it should have barred D'Ambrosio's reprosecution in its April 27, 2009 Order.*  Instead, the State argued that Rule 60(b) is an improper vehicle for obtaining relief from that order.  During oral argument, however, the State ultimately contested both prongs of D'Ambrosio's argument.  In light of the important interests at stake in these proceedings, the Court elects to consider those arguments "without reservation."  *Cf. Negron-Almeda v. Santiago*, 528 F.3d 15, 26 (1st Cir. 2008) ("The rule is that if an argument is raised belatedly in the district court but that court, without reservation, elects to decide it on the merits, the argument is deemed preserved for later appellate review.").  So, too, in light of the State's recent supplementary filing (Doc. 261), the Court will re-address an argument made by the State during the briefing on its Motion for an Extension of Time that was not ultimately material to a resolution of that motion, namely,

---

[4] D'Ambrosio notes that this time limit was, itself, an accommodation to the State.  *See Pillette v. Berghuis*, No. 2:06-14511, 2009 U.S. Dist. LEXIS 91818, at *5 (E.D. Mich. Oct. 2, 2009) ("A conditional writ is essentially an accommodation accorded to the state." (citing *Satterlee v. Wolfenbarger*, 453 F.3d 362, 368 (6th Cir. 2006))).

[5] Although the Court discourages litigants from confusing the length of an argument with its strength, the State's 7-page opposition could almost be described as a token response.

its contention that a district court lacks jurisdiction to bar reprosecution when a respondent fails to comply with a conditional writ of habeas corpus.

### A.  Whether this Court Would Have Barred Reprosecution on April 27, 2009

#### 1.  When a District Court Has Jurisdiction to Bar Reprosecution

As an initial matter, the State argues that the Court lacked (and continues to lack) jurisdiction to consider D'Ambrosio's question.  The State concedes that it failed to comply with the terms of the conditional writ, but argues that, while this Court certainly has jurisdiction to determine the consequences of that noncompliance in some respects (Doc. 224 at 1 (citing *Gentry v. Deuth,* 456 F. 3d 687, 692 (6th Cir. 2006))), the Court does not have jurisdiction to bar reprosecution:

> The Warden respectfully submits that the outcome D'Ambrosio seeks would be in derogation of the rule in *Pitchess v. Davis* 421 U.S. 482, 490 (1975) ("[N]either Rule 60(b), 28 USC 2254, nor the two read together, permit a federal habeas court to maintain a continuing supervision over a retrial conducted pursuant to a conditional writ granted by the habeas court.").

(Doc. 224 at 1.)  The State argues that the <u>only</u> time a habeas court can properly bar reprosecution of a successful habeas petitioner is when "the retrial itself would constitute a violation of constitutional rights" (*id*. at 2) and that the Sixth Circuit was mistaken when it indicated otherwise in *Satterlee v. Wolfenbarger*.  453 F.3d 362, 370 (6th Cir. 2006) ("[I]n 'extraordinary circumstances,' such as when 'the state inexcusably, repeatedly, or otherwise abusively fails to act within the prescribed time period [of a conditional writ] or if the state's delay is likely to prejudice the petitioner's ability to mount a defense at trial,' a habeas court may 'forbid[] reprosecution.'" (citing 2 RANDY HERTZ & JAMES S. LIEBMAN, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE, at 1685–86 (5th ed. 2005))).  The State also noted that, on April 27, 2009, D'Ambrosio no longer resided on death row, and analogized his release from death row to cases where a petitioner was no longer being held pursuant to a constitutionally defective conviction:

> For nearly six months, D'Ambrosio has been physically released from the Ohio State Penitentiary.  For nearly a month, D'Ambrosio has been free from even jail confinement,

7

in that he has been released on bond and has been living with a friend in Cleveland. Neither the State of Ohio, nor the Cuyahoga County Common Pleas Court, nor the Cuyahoga County Prosecutor, consider D'Ambrosio to be confined in any manner by the conviction and death sentence that has been vacated and dissolved by this Court.  Instead, the present proceedings of *State v. D'Ambrosio* are being conducted pursuant to the existing indictment.  *See Irvin v. Dowd*, 366 U.S. 717 (1961); *Fisher v. Rose*, 757 F. 2d 789, 791 (6th Cir. 1985) ("Since Fisher was no longer being held pursuant to the constitutionally defective conviction, we conclude that the District Court erred in ordering Fisher's release and barring retrial.").

(*Id.* at 3–4.)  The State did not, however, dispute that D'Ambrosio was still subject to restraint pursuant to his original, constitutionally defective, conviction.

D'Ambrosio, for his part, argued that the State's caselaw has no applicability when a state <u>fails</u> to comply with a conditional writ, and stands only for the proposition that a district court is without jurisdiction to bar reprosecution when a state has fulfilled the writ's condition:

The failure to comply with the conditional writ is the critical distinction, Your Honor, between the cases such as *Pitchess* and *Fisher*, and the cases such as *Satterlee* and the other cases, *Gentry*, that we cite in our brief.  *Pitchess* stands for the unremarkable proposition, Your Honor, that a District Court doesn't have jurisdiction after the state complies with the conditional writ.  In that case the state complied.  In that case the District Court nonetheless tried to oversee the proceedings after the state complied with the conditional writ . . . .  In *Fisher*, which is the Sixth Circuit decision from . . . 1985, there, too, the state had complied with the conditional writ.  In fact, in the *Fisher* decision, the Court notes that the state has started the proceedings in compliance with the writ issued by the District Court.  That is completely distinguishable from this case, where it's undisputed and conceded by the state that the conditional writ has not been complied with, and that's the critical distinction here . . . .  So when we consider the aspect of whether or not the writ has been complied with, you know, the answer is no. And then the question is, well, now what do we do?

(4/2/09 Hrg. Tr. at 222:14–223:25) (questions omitted).[6]

---

[6] In the interest of precision, the Court emphasizes what is <u>not</u> at issue: the analytically distinct question of whether the Court presently has jurisdiction to reconsider its original order under Rule 60(b) based on facts and circumstances that occurred after that order was final.  This is so because Espinoza died prior to the issuance of this Court's unconditional writ, while this Court retained jurisdiction over this matter.  As D'Ambrosio argued:

This Court issued an order [indicating that an unconditional writ would issue] on April 27th.  It stayed that order for 15 days.  During that time frame it had jurisdiction . . . .

If Espinoza had died at some point in time after that 15 days had expired, I think it's a closer call.  I still think 60(b) provides relief, but I think it is a closer call because we start

8

## 2.   The Importance of Espinoza's Death

If this Court did have jurisdiction to bar reprosecution, however, it does not automatically follow that such an order would have been appropriate.  Here, the threshold question is whether Espinoza's death prejudices D'Ambrosio's ability to use the evidence that the State wrongfully withheld from D'Ambrosio's first trial to such an extent that an order barring reprosecution would constitute an appropriate exercise of this Court's discretion.  D'Ambrosio argues that it does and that, had this Court known of Espinoza's death prior to issuing its April 27, 2009 Order, this Court would have barred D'Ambrosio's reprosecution in that Order, rather than stating:

> D'Ambrosio cannot demonstrate material prejudice from the additional two-month delay [occasioned by the State's failure to comply with the conditional writ].  While the State undoubtedly delayed the production of key discovery, the state court protected D'Ambrosio from the most material consequences of those discovery failures by granting a continuance . . . .

*D'Ambrosio II*, 619 F. Supp. 2d at 459.  D'Ambrosio offers two primary arguments to explain how Espinoza's death greatly prejudiced his defense, and the State urges this Court to reject them both.

---

> running into the issue in *Pitchess* of "we're done in habeas," and you start getting closer to the pronouncement in *Pitchess* that we don't want federal courts reaching in and supervising the state court proceedings . . . . [I]t's a question this Court doesn't have to grapple with on this issue, because clearly Espinoza died within the time frame that this Court had jurisdiction and was considering the issue of the bar of reprosecution.  And clearly Espinoza's death went to the series of facts really that this Court was considering on that issue, the series of facts that at the time led this Court to find that there was no prejudice to D'Ambrosio.  We now have a fact that existed at that time the Court decided the issue that completely suggests the opposite, that D'Ambrosio is prejudiced.

(*Id*. at 14:15–15:15 (emphasis added).)  In other words, this case does not consider the question of whether this Court would have jurisdiction under Rule 60(b) if prejudice had accrued by virtue of events that post-date the effective date of its order granting the unconditional writ.

This Court is not, moreover, being asked to consider the impact of any events occurring after the State had complied with this Court's mandate.  For instance, this Court is not being asked to consider whether it could bar reprosecution in a circumstance where, after a timely retrial had begun, a critical witness such as Espinoza died.  In that instance, any prejudice would not be attributable to the State's delay in complying with this Court's mandate and presumably would then need to be addressed first in the state courts.  That question also is not presented by this case.

9

### a.  D'Ambrosio's Characterization of Espinoza's Death

D'Ambrosio first notes that much of the previously withheld evidence was material because it would have been helpful during examination of Espinoza.  *Accord D'Ambrosio*, 527 F.3d at 499. During oral argument, D'Ambrosio's counsel contended:

> [We needed to be able to conduct] an examination of Espinoza on critical issues that we were unable to examine him on in 1988.  That examination would have taken place whether it was  in the state's case-in-chief or in our case-in-chief.  That examination would have consisted of talking with Espinoza about his relationship to Stoney Lewis, because we believe the two of them committed this crime.  That examination would have consisted of asking about Espinoza's knowledge of the Lewis-Longenecker-Klann connection that gave Stoney Lewis the motive and opportunity to kill Klann.
>
> That examination would have consisted of talking about events that happened the day after the Coconut Joe's incident that happened clearly on Thursday night, the tequila night. That examination would have consisted of questions about the inconsistencies of his story and what he told police.  No shoes were found on Tony Klann; that we didn't know until 2000. That Tony Klann, when found, didn't have a wallet. There was no blood or sign of struggle at the scene. All of that would have been part of an examination of Espinoza at a new trial.
>
> . . . .
>
> . . . I can assure you that the state is relieved now that Espinoza is dead.  The biggest weakness in their case was having Espinoza face the *Brady* evidence that was withheld in 1988, that was why it was withheld.  And so the biggest weakness in their case was Espinoza himself, but they were stuck with that theory at a new trial.

(10/9/09 Hrg. Tr. at 7:9–8:20.)  D'Ambrosio's counsel then argued that he was prejudiced for a second reason – that Espinoza's testimony was necessary to fully impeach other key witnesses for the State:

> [I]t just doesn't end with the examination of  Espinoza, Your Honor.  Let me give you another example of how this would play out in a trial and why we're prejudiced.  Let's imagine the examination of Detective Allen or any of the other police who talk about their investigation.  Our theory in this case is that the police did not investigate the leads that they should have . . . . [Detective Allen] didn't investigate Paul Stoney Lewis' apartment and what was in there.  He didn't investigate the fact that he knew that there were some bloody clothes in Keenan's garage . . . . He didn't investigate the tape that apparently existed at one point in time where Anthony Crimi [implicated] others in this crime.
>
> . . . Detective Allen has one place to go when faced with tough cross-examination about his failure to investigate, one place to go: Somebody told me, Eddy Espinoza told me that this crime was committed a certain way.

So during the cross-examination of Detective Allen or any of the other police, we're faced with two options: One, we open the door to Detective Allen talking about Eddy Espinoza's statement and what he told Detective Allen about how the crime was committed, or two, not being able to examine Detective Allen at all on any of those issues. Either way we're prejudiced, because in the former we can't thereafter show that the reliance on Espinoza was ridiculous.  There were so many holes in Espinoza's case or in Espinoza's story that it wasn't reasonable for the police to follow his story, to believe it to be true, but we'll never be able to show that through an examination of Espinoza.  Or number two, we simply don't examine Detective Allen or any of the other police at all on those issues, and again, we're prejudiced.

(*Id*. at 8:21–10:8.)  D'Ambrosio's counsel concluded:

[T]he whole key to our defense is the setup, is the setup of Espinoza during his examination.  We can't do that without him present . . . .  The issue is, can I effectively use the *Brady* evidence that the state withheld in 1988 to defend D'Ambrosio at trial.  And the answer to that is no, not without an Espinoza examination at trial . . . .  I don't mean to say the same thing over and over, but the only reason we're in this position is because he wasn't tried within 180 days as this Court ordered.  That is the only reason we're faced with this.  It is the only reason why we can't pursue the defense theory that we want to pursue.  That's it.

(*Id*. at 24:3–25:11.)[7]

### b.  The State's Description of Espinoza's Death

In response to these contentions, the State argued that, contrary to D'Ambrosio's assertions, Espinoza's death is helpful to D'Ambrosio:

Frankly, Your Honor, I think it stretches the imagination to believe the defense would call Eddy Espinoza to the stand if for some reason the state chose not to bring him in as a witness, if not for his untimely death.  To say they need Eddy Espinoza there so they can impeach him with the *Brady* evidence that was withheld from them initially is really a stretch.  What they need to be able to do is argue the *Brady* evidence that this Court determined was withheld from them.  They should have been able to use that, they still can use that.  They don't need to bring that in through Eddy Espinoza, and certainly [that] would be dangerous to their case.  That's why I say, it stretches the imagination that they would need to bring in Eddy Espinoza to indicate that Mr. D'Ambrosio was [not] involved in this murder.

---

[7] During argument, D'Ambrosio's counsel gave numerous examples of the particular questions he would have asked Espinoza.  The Court need not discuss these questions in full, save to say that the Court finds them to be credible examples of specific questions that would have assisted D'Ambrosio's defense.

. . . .

I think the best case scenario for them in the world is that Mr. Espinoza not testify . . . . [T]he state's only eyewitness is no longer available.  I don't see how we were wishing that our only eyewitness to a murder who had testified to that effect and had testified as to Mr. D'Ambrosio's participation in that, that we would be happy about that circumstance.  It certainly is not the case.

(*Id*. 27:17–28:6; 48:24–49:6.)[8]  The State did, however, have difficulty articulating why D'Ambrosio's inability to examine Espinoza would not hinder D'Ambrosio's efforts to impeach the State's other witnesses:

THE COURT:      I think [counsel for D'Ambrosio's] point is that the entirety of Detective Allen's investigation is colored by the fact he was relying on Eddy Espinoza's version of events and never really investigated an alternate version.  [Isn't D'Ambrosio prejudiced by his inability to use Espinoza to undermine Detective Allen?]

MS. WILLIAMSON: Well, that's when [another] police report [indicating other possible theories of the crime] and testimony would come in.  That certainly would refute, be able to impeach what Detective Allen did or did not do during his investigation, and information that was not available to the defense originally.  Also, any of the other information, actually, the trace evidence report that was obtained afterwards, and any other investigatory end of this, the report of the tape and how that may have entered into this and may have caused someone else to have a motive to do this killing, it would all show the lack of Detective Allen's [investigation] if they chose to use it that way.

(*Id*. at 29:12–30:3.)  Indeed, the State ultimately acknowledged that Espinoza's allegations are still the basis of the State's theory of the murder:

THE COURT:      [Am I correct that] you are saying essentially [that] the state still intends to pursue the same theory, which was the theory that was designed around Mr. Espinoza's testimony the first time around?

MS. WILLIAMSON: Yes.

(*Id*. at 31:12–16.)  Far from being prejudicial to D'Ambrosio, however, the State asserted that this was positive for him; as the State frames this issue, their star witness is now unavailable.

---

[8] As explained above, the State did not address the impact of Espinoza's death during briefing.

### B.  The Applicability of Rule 60(b)

Even if the Court concludes that it *would* have barred reprosecution on April 27, 2009, however, D'Ambrosio is not necessarily entitled to relief now.  Rather, the Court must still determine whether relief is appropriate under Rule 60(b)(6), which justifies relief from judgment in extraordinary circumstances.[9]  D'Ambrosio, for his part, argues that Rule 60(b) contemplates just such a situation, whereas the State argues that Rule 60(b) is procedurally inapplicable.[10]

The State makes five procedural arguments, three of which merit discussion.[11]  First, the State notes that Rule 60(b) only authorizes a Court to vacate its prior judgment, and argues that D'Ambrosio's motion exceeds the permissible scope of this rule because he also asks the Court to act affirmatively and bar his reprosecution.  Second, the State cites the well-established principle that claims must be fully

---

[9] D'Ambrosio initially asserted that any one of three provisions might justify relief: Rule 60(b)(2), (5), or (6).  As explained below, however, to the extent that relief is justified, it is justified under Rule 60(b)(6).

[10] The State also restates its argument that extraordinary circumstances are not present because Espinoza's death does not prejudice D'Ambrosio.  The State does not, however, otherwise dispute the applicability of Rule 60(b)(6); in other words, the State implicitly concedes that *if* this Court had jurisdiction to bar D'Ambrosio's reprosecution on April 27, 2009, *if* D'Ambrosio is prejudiced by Espinoza's death, and *if* relief under Rule 60(b) is procedurally appropriate, *then* relief under Rule 60(b)(6) is justified.

[11] The State's other two arguments are straightforward to resolve.  First, the State makes particular arguments about the inapplicability of Rule 60(b)(2).  Those arguments are essentially moot, because the Court ultimately considers D'Ambrosio's motion under Rule 60(b)(6).  To the extent the State's points on Rule 60(b)(2) remain viable, the Court incorporates them into its decision to rely on Rule 60(b)(6), rather than Rule 60(b)(2).  Second, the State argues that D'Ambrosio is not entitled to seek relief from only a portion of the Court's prior judgment, i.e., that he must seek to set aside all aspects of the Court's prior order.  This, however, is a misunderstanding of the law.  *See LSLJ Partnership v. Frito-Lay*, 920 F.2d 476, 477 (7th Cir. 1990) ("The plaintiff-appellant appeals from an order of the district court denying plaintiff's motion to vacate a portion of the judgment under Rule 60(b) of the Federal Rules of Civil Procedure. We reverse and remand."); *Kandiah v. JPMorgan Chase Bank, N.A.*, No. 08-Civ.-6956, 2009 U.S. Dist. LEXIS 51499, at *10 (S.D.N.Y. June 18, 2009) ("Pursuant to Rule 60(b) (1), the portion of the judgment dismissing the claims brought by GK is hereby vacated."); *cf. Abdur'Rahman v. Bell*, 493 F.3d 738, 742 (6th Cir. 2007) (Cole, J., dissenting) ("The panel majority now holds, as I would, that *Crosby* requires treating Abdur'Rahman's motion to reopen the district court's judgment (specifically, that portion of the judgment dismissing his prosecutorial-misconduct claims as procedurally defaulted) as a Rule 60(b) motion . . . .").

litigated in state court prior to being raised as a basis for habeas relief, and argues that the impact of Espinoza's death must be fully litigated in the State system before this Court can consider it.  The State argues that "[w]hat remaining effect, if any, Espinoza's recent death will have on the ongoing state criminal proceedings is fully justiciable in state court."  (Doc. 253 at 7.)  The State continues:

> The Court of Common Pleas has already granted D'Ambrosio's request to exclude Espinoza's prior testimony from the State's case.  In essence, D'Ambrosio's motion for relief from judgment is moot.  He seeks an order barring reprosecution due to his inability to confront testimony that has been excluded from the State's case.  The fact that the state court has already granted D'Ambrosio his requested relief (i.e., excluding Espinoza's testimony from the State's case) is prima facie evidence that his claims are unexhausted .
> . . .

(*Id.* (citation omitted).)  Finally, the State asserts that D'Ambrosio's motion should be considered a second or successive habeas petition because it attacks this Court's prior judgment on the merits, and that it should be barred under the strict procedural requirements that limit the filing of such petitions.

On reply, D'Ambrosio addresses each of the State's assertions.  First, he argues that he is not asking for any relief under Rule 60(b) other than an order vacating the portion of the Court's prior judgment denying the State's motion for an extension of time.  He explains:

> Under Rule 60(b), parties may raise circumstances not considered by the court that would alter the court's analysis of the legal claims initially presented . . . .
>
> If the 60(b) motion has merit, the court will vacate its earlier judgment, putting the parties back in the same procedural posture that existed immediately before the judgment issued—but with the previously unknown circumstances now in play . . . . That is, the case remains open, and the court must apply the substantive law as it stands at that time . . . . Rule 60(b) does not itself authorize further affirmative action or relief by the district court.  But that does not mean further relief is precluded.  Rather, such further relief occurs simply as part of the process the parties were in before.

(Doc. 255 at 5.)  Second, D'Ambrosio concedes that relief under Rule 60(b) is inappropriate when a habeas petitioner asserts a new claim that has not first been presented to the state courts, but argues that he is not asserting grounds for habeas relief *at all*.  Rather, he is asking the Court to vacate a portion of its ruling on *the State's* motion for an extension of time, a question solely directed at this Court's proceedings:

14

[T]he State maintains that any new claims [must] be exhausted by fair presentment and final adjudication in the state system.  Though that proposition is generally accurate, it has no application to the issues presented here.  D'Ambrosio is not bringing any new claims challenging his conviction; he is raising the same reprosecution issue as before, and his conviction has been expunged.

. . . .

The State . . . argues that the exclusion of Espinoza's testimony is prima facie evidence that [D'Ambrosio's] claims are unexhausted.  The State is confused here again. The threshold question before this Court is whether . . . the current state proceedings (the reprosecution) should be taking place.  By definition, that question is not moot; the reprosecution is ongoing and the State is actively attempting to proceed to trial on the pending homicide charge . . . . [Whether reprosecution should proceed at all is a question that is] independent from issues surrounding [rulings made during] the state [proceedings] (including the ruling excluding Espinoza's testimony), which, of course, must proceed through the state system . . . . But, contrary to the State's attempt to mix the two, those latter state court issues are not before this Court at this time.

(*Id*. at 13.)  Last, D'Ambrosio asserts that the framework of a second or successive legal petition is inapposite when a party prevails on an initial habeas petition.  It is, D'Ambrosio contends, difficult to fathom how a successful habeas petitioner could *ever* file a second or successive habeas petition, given that there is no longer any conviction to challenge.  (*Id*. at 9 ("Whatever else the [petitioner] may do at this stage, he or she is no longer challenging the state conviction.")).

### III.   ANALYSIS

As indicated above, this Court must consider two distinct questions: whether barring retrial would have been appropriate on April 27, 2009, and, if so, whether Rule 60(b) provides an appropriate vehicle for the Court to vacate its earlier judgment.[12]  The former question is one about the fundamental power of a habeas court: it asks the Court to consider the circumstances under which a habeas court may issue an order preventing the state from attempting to reprosecute a successful habeas petitioner.  The latter question is procedural: it asks the Court to consider when a habeas petitioner may avail himself of Rule 60(b).

---

[12] As explained more fully below, it is undisputed that, on April 27, 2009, D'Ambrosio was still subject to restraints imposed by virtue of his unconstitutional conviction.

### A.  This Court Would Have Barred D'Ambrosio's Reprosecution on April 27, 2009, Had it Known of Espinoza's Death

#### 1.  This Court Had Jurisdiction to Consider Barring Reprosecution

The jurisdictional question is in some ways a simple one.  The Sixth Circuit has said that a district court may enter an order barring reprosecution when a state fails to comply with the terms of a conditional writ of habeas corpus, *see Satterlee*, 453 F.3d at 370, and no Sixth Circuit or Supreme Court case states otherwise.  In a very real sense, this Court's jurisdictional analysis begins and ends with that observation.  This is a district court, and it must follow binding precedent when such precedent exists.  So, too, this case is straightforward as a matter of first principles: this Court issued an order with which the State failed to comply.  It would be a peculiar rule if this Court lacked jurisdiction to consider the effect of that noncompliance.[13]

#### a.  The State's Cases are Inapplicable to These Facts

The State, nonetheless, has argued that a number of cases indicate that a district court is without jurisdiction to bar reprosecution of a successful habeas petitioner except when reprosecution itself is impossible in light of the underlying constitutional violation.  For this proposition, the State cites *Pitchess v. Davis*, *Eddleman v. McKee*, and *Fisher v. Rose*.  *See Pitchess v. Davis* 421 U.S. 482, 490 (1975) (per curiam) ("[N]either Rule 60(b), 28 USC 2254, nor the two read together, permit a federal habeas court to maintain a continuing supervision over a retrial conducted pursuant to a conditional writ

---

[13] This is particularly true because every circuit to consider the issue has held that, in extraordinary circumstances, a district court may bar reprosecution in lieu of issuing a conditional writ of habeas corpus.  *See, e.g.*, *Douglas v. Workman*, 560 F.3d 1156, 1176 (10th Cir. 2009) ("Barring a new trial may be necessary . . . when the error forming the basis for the relief cannot be corrected in further proceedings, and it may be a permissible form of relief when other exceptional circumstances exist such that the holding of a new trial would be unjust." (citation and internal quotation marks omitted)); *DiSimone v. Phillips*, 518 F.3d 124, 127 (2d Cir. 2008) ("[I]n special circumstances federal courts may bar retrial of a successful habeas corpus petitioner without his having first sought protection from retrial in the state courts.  In all but the most extreme circumstances, this would be appropriate only when the grant of habeas corpus is premised on a theory which inevitably precludes further trial.").  It is difficult to understand why a district court would have that power, but not the comparatively less intrusive power to bar reprosecution after the State failed to comply with a conditional writ.

16

granted by the habeas court."); *Eddleman v. McKee*, 586 F.3d 409, 414 (6th Cir. Mich. 2009) ("No federal power authorized the district court to release Eddleman from pretrial detention on a legitimate state charge, or to bar his reprosecution."); *Fisher v. Rose*, 757 F.2d 789, 791 (6th Cir. 1985) ("Since Fisher was no longer being held pursuant to the constitutionally defective conviction, we conclude that the district court erred in ordering Fisher's release and barring retrial.").  What the State fails to recognize, however, is that, in each of those cases, *the respondent complied with the terms of the conditional writ* and, concomitantly, none of the petitioners suffered any prejudice as a result of the state's non-compliance with a habeas court's order.  The district courts in the State's cases were not properly exercising supervisory power over a writ of habeas corpus: they were attempting to regulate the constitutionally sound reprosecution of a defendant who had previously received habeas relief.  *See D'Ambrosio*, 619 F. Supp. 2d at 456 ("*Pitchess* . . . stands only for the proposition that a habeas court may not intervene in a state court proceeding after the terms of the conditional writ *have been satisfied*. Because of the obvious distinction, *Pitchess* is not controlling authority here." (emphasis in original)).

While the distinction from a pragmatic perspective is an unquestionably fine one, it is meaningful, as a review of the cases cited by the State illustrates.  First, in *Pitchess v. Davis*, a federal district court granted habeas relief because the respondent had failed to produce *Brady* evidence at trial. 421 U.S. at 483–84.  In response to the habeas court's order, the respondent produced the *Brady* evidence and otherwise "moved to retry respondent in accordance with the terms of the conditional writ . . . ." *Id*. at 482.  Unfortunately, however, other evidence pertaining to the case had been "destroyed as a matter of police routine sometime during the six years between the time respondent's conviction became final and issuance of the conditional writ of habeas corpus." *Id*. at 484.[14]  When this fact was brought to the attention of the habeas court, the habeas court concluded that a fair prosecution was

---

[14] In other words, this evidence was destroyed before the habeas court entered its order granting a conditional writ of habeas corpus.  Accordingly, the respondent's actions following the issuance of that writ could not possibly have been said to prejudice the petitioner.

impossible and barred retrial.  *Id*.  The Supreme Court reversed, noting that petitioner Pitchess was asserting an entirely new claim – that a fair trial was impossible because the police had destroyed certain evidence – not yet exhausted in the state system.  *Id*. at 490.  *Pitchess*, then, presents a different conceptual issue than the instant case in at least three critical respects: (1) in *Pitchess*, the state did not violate the conditional writ; (2) any prejudice to the petitioner in *Pitchess* was not the result of non-compliance with a federal court order; and (3) the habeas court in *Pitchess* attempted to consider a claim that was unconnected to the original basis for habeas relief.

The two Sixth Circuit cases cited by the State are also unavailing.  In *Fisher v. Rose*, the district court granted conditional habeas relief because the petitioner had been denied his Sixth Amendment right to confront a witness against him.  757 F.2d at 790.  The habeas court gave the respondent 90 days to release or retry Fisher.  *Id*.  The respondent complied and released petitioner Fisher from his unconstitutional conviction, but proceeded to re-arrest and hold him under pretrial detention pending retrial.  *Id*.  After 90 days had elapsed from the habeas court's initial order (*after* Fisher had been released from his unconstitutional conviction but *prior* to retrial), petitioner appeared again before the habeas court and argued that it should bar his reprosecution.  *Id*.  Fisher, like the petitioner in *Pitchess*, argued that the unavailability of certain evidence at his new trial made that new trial constitutionally infirm.  *See id*.  The habeas court agreed that Fisher could no longer receive a fair trial and barred his reprosecution.  *See id*. at 790–91.  The Sixth Circuit reversed, concluding that Fisher, like the petitioner in *Pitchess*, was attempting to assert an entirely new claim that had never been presented in the state courts.  *Id*. at 791.  *Fisher*, however, is conceptually distinct from this case for exactly the same reasons as *Pitchess*.  Importantly, while the petitioner in Fisher may not have realized until his retrial that critical evidence was unavailable to him by virtue of its destruction while his post-conviction proceedings were pending, the petitioner did not argue that he was deprived of any evidence *by virtue of* any delay in commencing his retrial.

Here, D'Ambrosio argues that, had the State timely complied with the mandate, Espinoza would have been alive and available for trial.  In other words, D'Ambrosio contends that the prejudice to which he points in support of his request that retrial be barred was caused by the State's failure to comply with this Court's mandate – a claim that neither the petitioner in *Pitchess* nor the petitioner in *Fisher* could make.[15]

Finally, the State's citation to *Eddleman v. McKee*, a case which has, if anything, even less application to the facts of this case than *Pitchess* and *Fisher*.  In *Eddleman*, the district court granted conditional habeas relief because Eddleman's coerced confession had been used against him at trial. 586 F.3d at 411.  That court gave the respondent 45 days to release or retry Eddleman.  *Id*.  After the Sixth Circuit issued its mandate affirming the habeas court's order "Eddleman's conviction was vacated in state court – thereby releasing him from custody pursuant to the unconstitutional judgment – and the State rearrested him on the underlying criminal information and began the process of his prosecution anew."  *Id*. at 413.  For reasons that are unclear from the record, however, a substantial length of time elapsed prior to any additional activity in state court and the habeas court eventually entered an order holding that the respondent was forbidden from retrying Eddleman due to the passage of that time.  *Id*. at 412.  The Sixth Circuit stayed the effect of that order, allowing Eddleman's state court trial to proceed. *Id*.  At this point, rather than face a new trial, Eddleman chose to plead guilty to the crime for which he had originally been unconstitutionally convicted.  *Id*.  The habeas court then ordered Eddleman released from prison, concluding that, because the state had taken too long to retry Eddleman, the petitioner's guilty plea was infirm.  *Id*.  The Sixth Circuit reversed, holding that the district court lacked jurisdiction

---

[15] Importantly, this Court has already concluded that it cannot bar his retrial, nor provide D'Ambrosio with any relief, based on the fact that significant evidence was destroyed between his first trial and what would have been the expiration of this Court's mandate on March 10, 2009.  *See D'Ambrosio II*, 619 F. Supp. 2d at 451 n.21.  Indeed, D'Ambrosio concedes that, under *Fisher* and *Pitchess*, he could not ask this Court to do so.

under *Fisher v. Rose*.  *Id*. at 412–14 ("[O]nce the unconstitutional judgment is gone, so too is federal jurisdiction under § 2254.").[16]

*Eddleman* has no applicability here: like *Pitchess* and *Fisher*, *Eddleman* is a case in which the respondent complied with the conditional writ.  Even beyond *Pitchess* and *Fisher*, moreover, *Eddleman* presents a case in which the petitioner suffered no type of prejudice from any source whatsoever.  It is clear that the State's failure to comply with this Court's September 11, 2008 Order and the fact that the only prejudice to which D'Ambrosio points arises out of a change in circumstances that would not have occurred but for that failure, materially distinguishes this case from *Pitchess*, *Fisher*, and *Eddleman*, making the jurisdictional principle articulated in those cases inapplicable.

### b.  D'Ambrosio Cites Binding Sixth Circuit Law

The State argues not only that its own cases indicate that this Court is without jurisdiction, but also that the primary case upon which D'Ambrosio relies for the proposition that this Court may bar his reprosecution, *Satterlee*, is "bad law."  This Court has already addressed this argument in its April 27, 2009 Order, and repeats its conclusion here:

> While the circumstances under which it may do so are not clearly defined, whether a district court is permitted to bar a state's reprosecution of a habeas petitioner does not seem to remain in debate.  In *Satterlee*, the district court granted a conditional writ after finding that defense counsel never communicated the state's plea offer to the defendant. 453 F.3d at 364-65.  The district court gave the state sixty days to reinstate its original plea offer.  When the deadline passed, the petitioner applied for his immediate release, after which the district court granted an unconditional writ. *Id.* at 365.
>
> On appeal, the Sixth Circuit observed that, pursuant to *Fisher v. Rose*, 757 F.2d 789 (6th Cir. 1985), a state ordinarily is not precluded from re-arresting and re-trying a petitioner once a habeas court issues an unconditional writ. *Satterlee*, 453 F.3d at 370. It reasoned,

---

[16] The petitioner in *Eddleman* attempted to argue that a state could "indefinitely detain successful habeas petitioners 'by simply scheduling a trial date and then cancelling it,'" *Eddleman*, 586 F.3d at 413.  This is inaccurate.  In such a case [where, unlike in *Eddleman*, a state failed to comply with the conditional writ], an unconditional writ could properly issue.  *See Gentry,* 456 F. 3d at 692 ("[T]he sole distinction between a conditional and an absolute grant of the writ of habeas corpus is that the former lies latent unless and until the state fails to perform the established condition, at which time the writ springs to life.").

20

however, that "in 'extraordinary circumstances,' such as when 'the state inexcusably, repeatedly, or otherwise abusively fails to act within the prescribed time period or if the state's delay is likely to prejudice the petitioner's ability to mount a defense at trial,' a habeas court may 'forbid [] reprosecution'." *Id.* (citing 2 RANDY HERTZ AND JAMES S. LIEBMAN, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 33.3, at 1685-86). It thereafter remanded the case to the district court to determine whether it had intended to bar reprosecution.

Here, the Warden argued in her brief and during the evidentiary hearing that this Court lacks the jurisdiction to intervene in the on-going state court proceedings and that this recent Sixth Circuit caselaw to the contrary is either in error or of no effect. In particular, the Warden questioned whether the *Satterlee* holding is binding on this Court.

. . . .

Indeed, the development of the law in this Circuit since *Satterlee* suggests it *is* the controlling standard. First, the Sixth Circuit itself has cited *Satterlee* for the proposition that jurisdiction to bar retrial in extraordinary circumstances does indeed exist. *House v. Bell*, 287 Fed. Appx. 439, 440 (6th Cir. 2008) (Norris, J.). District courts in this Circuit, moreover, including the *Satterlee* court on remand and this Court in *Girts v. Yanai*, No. 02-CV-264, slip op., at 4 (N.D. Ohio Nov. 6, 2008), have cited *Satterlee* as the prevailing authority regarding a habeas court's jurisdiction to bar a petitioner's retrial and as setting forth the standard by which to determine if such action is appropriate. *See also Scott v. Bock*, 576 F. Supp. 2d 832 (E.D. Mich. 2008) (following *Satterlee* holding and analyzing whether to bar state retrial pursuant to standard set forth therein).

Other circuits also are in accord with *Satterlee* that a habeas court's authority extends to barring a state's retrial of a petitioner where the circumstances are sufficiently extraordinary to warrant such an order. . . .

In the face of *Satterlee*'s unequivocal holding, and the substantial case law consistent with that holding, the Court declines the Warden's suggestion that it ignore that holding.

*D'Ambrosio*, 619 F. Supp. 2d at 456–57 (emphasis in original). Accordingly, on April 27, 2009, this Court had jurisdiction to enter an order barring D'Ambrosio's reprosecution. *See Satterlee*, 453 F.3d at 370; *see also Harvest v. Castro*, 531 F.3d 737, 750 (9th Cir. 2008).[17]

---

[17] In light of the State's persistent argument that this Court should simply ignore *Satterlee*, the Court emphasizes its place in the federal system. This Court does not presume that the *Satterlee* court, which cited *Fisher*, meant to ignore *Fisher*. This Court does not conclude that the *Eddleman* court, which cited *Satterlee* as good law, meant that *Satterlee* was bad law. The Court, as well, assuredly declines to predict that some future *en banc* panel of the Sixth Circuit intends to overrule *Satterlee*, thus creating a circuit split on an apparently settled issue. (*See infra* fn. 18.) The Sixth Circuit surely has the power to instruct this Court otherwise, *but that is a request to be made of the Sixth Circuit*.

## 2.  When a District Court May Appropriately Bar Reprosecution

A habeas court is empowered to grant relief "as law and justice require."  28 U.S.C. § 2243. This "statutory basis for the federal courts' authority to render habeas corpus relief . . . vests the federal courts with 'the largest power to control and direct the form of judgment to be entered in cases brought . . . on habeas corpus.'"  *Douglas, v. Workman*, 560 F.3d 1156, 1176 (10th Cir. 2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)).  A habeas court may even bar reprosecution of a successful habeas petitioner in "extraordinary circumstances, such as when the state inexcusably, repeatedly, or otherwise abusively fails to act within the prescribed time period or if the state's delay is likely to prejudice the petitioner's ability to mount a defense at trial . . . ."  *Satterlee*, 453 F.3d at 370 (quotation marks and citation omitted); *see also Morales v. Portuondo*, 165 F. Supp. 2d 601, 609 (S.D.N.Y. 2001) (Chin, J.) ("In the extraordinary circumstances of this case, I conclude that the proper remedy – the only just remedy – is the unconditional discharge of [the petitioners]. Their convictions must be vacated and the District Attorney's Office precluded from retrying them . . . .").[18]  Nevertheless, "to recognize that

---

[18] The standard articulated in *Satterlee* appears to be in accord with the conclusion of every other circuit to consider this issue.  *See Douglas*, 560 F.3d at 1176; *DiSimone*, 518 F.3d at 127; *Foster v. Lockhart*, 9 F.3d 722, 727 (8th Cir. 1993) ("A district court has authority to preclude a state from retrying a successful habeas petitioner when the court deems that remedy appropriate.  Nevertheless, this is an extraordinary remedy that is suitable only in certain situations, such as when a retrial itself would violate the petitioner's constitutional rights." (citation omitted)); *Heiser v. Ryan*, 951 F.2d 559, 564 (3d Cir. 1991) ("[D]ischarge is appropriate where attempting an alternate remedy would not vitiate the prejudice of the fundamental unfairness or would itself violate a petitioner's constitutional rights." (citation omitted)); *cf. Harvest v. Castro*, 531 F.3d 737, 750 (9th Cir. 2008) ("Federal courts *usually* permit rearrest and retrial after the time period specified in the conditional release order has elapsed . . . ." (emphasis added) (citing Hertz & Liebman, *supra*, at 1686); *Cave v. Singletary*, 84 F.3d 1350, 1358 (11th Cir. 1996) (Kravich, J., dissenting) ("[T]he most relevant Eleventh Circuit case seems to comport with the majority view that habeas courts have the power to bar retrial or resentencing.").

Indeed, the lone circuit that has been described as having caselaw in tension with *Satterlee*, *see id.* (referencing *Smith v. Lucas*, 9 F.3d 359, 366 (5th Cir. 1993)), considered a readily distinguishable question.  In *Smith*, the Fifth Circuit held only that a district court lacks the power to commute a death sentence into a sentence of life.  *See Smith*, 9 F.3d at 366 ("[T]he district court did not have the authority under federal law to compel Mississippi to 'impose upon [Smith] a sentence of life imprisonment.'").  The Fifth Circuit, then, does not seem to be in substantial tension with the conclusions of other circuits.

this extreme remedy is authorized is not to condone its routine use . . . ."  *Cave v. Singletary*, 84 F.3d 1350, 1359 (11th Cir. 1996) (Kravich, J., dissenting).

In the usual case, even when a petitioner successfully demonstrates that he has been held in violation of the Constitution or laws of the United States, the state is not subsequently prevented from attempting to obtain a constitutionally valid conviction.  *See DiSimone v. Phillips*, 518 F.3d 124, 127 (2d Cir. 2008); *Satterlee*, 453 F.3d at 370.  Under the modern practice, moreover, a state is not ordinarily prevented from continuing to hold a petitioner pursuant to the defective conviction while attempting to obtain a new conviction; rather, a court issues a "conditional writ of habeas corpus" providing the state some period of time to either provide the petitioner a constitutional trial or release the petitioner from custody.  *See Pillette v. Berghuis*, No. 2:06-14511, 2009 U.S. Dist. LEXIS 91818, at *5 (E.D. Mich. Oct. 2, 2009) ("A conditional writ is essentially an accommodation accorded to the state." (citing *Satterlee*, 453 F.3d at 368)); *see also Gentry*, 456 F.3d at 692.  Indeed, this Court previously declined to bar reprosecution even when the State ignored a conditional writ in its entirety and simply continued to hold a petitioner pursuant to a defective conviction.  *See Girts v. Yanai*, No. 02-CV-00264, 2008 U.S. Dist. LEXIS 108844, at *9–10 (N.D. Ohio Nov. 5, 2008) ("Though an extremely close question on these facts, the Court concludes that the State's conduct falls just short of the type of abuse [that would merit an order barring any future prosecution]."); *but see Pillette*, 2009 U.S. Dist. LEXIS 85521 (entering an order barring reprosecution on facts less egregious than *Girts*).  In sum, then, while a federal court has the power to prevent the state from attempting to reprosecute a successful habeas petitioner, such power is only exercised appropriately in extraordinary circumstances.  *See Smiley v. Thurmer*, No. 03-C-0656, 2009 U.S. Dist. LEXIS 41714, at *4–5 (E.D. Wis. May 5, 2009) (citing *Satterlee*, 453 F.3d at 370); *Scott v. Bock*, 576 F. Supp. 2d 832, 838 (E.D. Mich. 2008); *see also DiSimone*, 518 F.3d at 127; *Foster*, 9 F.3d at 727.  The Court is mindful, then, that D'Ambrosio must clear a high bar in order to receive relief

in this case.  The Court now turns to the question of what facts and circumstances might warrant the conclusion that such a bar has been satisfied.

While the circuits appear uniform in their *theoretical* support for the proposition that a habeas court may bar reprosecution under certain circumstances, *see, e.g.*, *Douglas*, 560 F.3d at 1176; *Foster*, 9 F.3d at 727, the reality is that it appears that only a few district courts have ever done so outside circumstances where "the grant of habeas corpus is premised on a theory which inevitably precludes further trial," *DiSimone*, 518 F.3d at 127.  And, as this Court has previously noted, there is scant appellate authority discussing when a court properly acts within its discretion to bar reprosecution beyond the general statement in *Satterlee* and cases endorsing its principle that, when "'the state inexcusably, repeatedly, or otherwise abusively fails to act within the prescribed time period or if the state's delay is likely to prejudice the petitioner's ability to mount a defense at trial,' a habeas court may 'forbid [] reprosecution.'"  453 F.3d at 370 (citing HERTZ & LIEBMAN, *supra* at 1685–86).

A review of those district court cases addressing the precise question reveals two distinct approaches: Courts who take *Satterlee's* language as setting the boundaries for the exercise of their discretion and find that inexcusable failure to comply with the terms of a conditional writ is itself sufficient to justify a prosecution bar, and those who use *Satterlee's* inexcusable delay language as a starting point and look to other circumstances to inform the exercise of their discretion.  In the first camp, for instance, are the decisions in *Satterlee* on remand, *Satterlee v. Wolfenbarger*, Case No. 03-71682, 2007 U.S. Dist LEXIS 36046 (E.D. Mich. May 17, 2007) and in *Pilette*, 2009 U.S. Dist. LEXIS, at *2.  In both cases, the district court barred retrial after finding that the respondent had failed to comply with the conditional writ prior to its expiration and failed to offer any valid excuse for that failure.  In the other are *Scott v. Bock*, 576 F. Supp. 2d 832 (E.D. Mich. 2008) and *Morales v. Portuondo*,  165 F. Supp. 2d 601 (S.D.N.Y. 2001), one refusing to bar retrial and the other entering an order doing so, but reaching those conclusions after considering a variety of factors beyond the mere

24

failure to satisfy the mandate, such as the cause of the delay, improprieties in the investigation or prosecution (or lack thereof), the length of the petitioner's confinement following the unconstitutional conviction, and the strength of the evidence of the petitioner's guilt.

This Court has already gone on record as being firmly in the latter camp, both in *D'Ambrosio II* and in its decision in *Girts*, 2008 U.S. Dist. LEXIS 108844, at *15–16.  Ultimately, this Court has made clear that, absent factors that combine to compel the conclusion that a retrial in a given case would fail to serve the interests of justice, it will not bar retrial.  *D'Ambrosio II*, 619 F. Supp. 2d 428; *Accord Morales*, 165 F. Supp. 2d at 614.[19]

Applying that standard to this case on the facts then currently known to it, this Court did not find the circumstances on April 27, 2009 so compelling as to merit the extraordinary remedy of an order barring retrial.  *D'Ambrosio II*, 619 F. Supp. 2d 428.  The primary factors upon which the Court relied in reaching that conclusion, and those it felt distinguished this case from the one before the Court in *Morales*, were the absence of any prejudice to D'Ambrosio *from the fact of the delay* (as distinct from prejudice arising from the passage of time during which he pursued his appeals and post-conviction relief) and the somewhat lesser degree of impropriety by the prosecution during the retrial proceedings than that described by the Court in *Morales*.  *See id*. at 459.

The Court now turns to the question of whether the facts *existing on April 27, 2009 and only now known to it* tip the delicate and important balance it employed when it first assessed D'Ambrosio's request for an order barring his retrial.  Clearly they do.

---

[19] It is noteworthy that, even if the court in *Eddleman* had retained jurisdiction, the reprosecution bar would still have been inappropriate under the standard the Court adopts here: it does not appear that the district court made any finding of impropriety by the respondent as to the cause of the delay, there was no apparent prejudice to the petitioner, there was no question about the respondent's ability to remedy the unconstitutional violation that gave rise to the writ, and the petitioner freely confessed to murder, removing any doubt as to his guilt.

### 3.  The Case Before the Court is Extraordinary

If any case properly should be described as extraordinary, it is this one.  For 20 years, the State held D'Ambrosio on death row, despite wrongfully withholding evidence that "would have substantially increased a reasonable juror's doubt of D'Ambrosio's guilt."  *D'Ambrosio*, 527 F.3d at 499.  Despite being ordered to do so by this Court during the extensive habeas proceedings before it, the State still failed to turn over all relevant and material evidence relating to the crime of which D'Ambrosio was convicted.  *D'Ambrosio II*, 619 F. Supp. 2d at 451–53.  Then, once it was ordered to provide D'Ambrosio a constitutional trial or release him within 180 days, the State did neither.  *See id*. at 451–55.  During those 180 days, the State engaged in substantial inequitable conduct, wrongfully retaining and delaying the production of yet more potentially exculpatory evidence.  *See id*.  And, as the 180-day deadline approached, certain of the State's counsel baselessly attacked the state trial judge, came before this Court and supplied testimony that, charitably, only can be described as "strain[ing] credulity," and showed startling indifference to D'Ambrosio's rights.  *Id*. at 451–55.  Because the State failed to retry D'Ambrosio within 180 days, moreover, the critical State's witness – the man around whom the entire theory of the State's case revolved – is no longer available for trial, a fact the State knew but withheld from D'Ambrosio, the state court, and this Court.  To fail to bar retrial in such extraordinary circumstances surely would fail to serve the interests of justice.  Indeed, it would pervert those interests.

### a.  The State's Inequitable Conduct is Substantial

The April 27, 2009 Order recounts the State's inequitable conduct during the original mandate period in detail, and no purpose is served by repeating that here.  *See D'Ambrosio II*, 619 F. Supp. 2d at 450–55.  There is a critical new element of impropriety, however, which cannot be ignored.  Whereas the Court initially concluded that "there is no evidence of an attempt by the current prosecutors to affirmatively hide evidence . . . ," *id*. at 460, that the State hid Espinoza's death from all involved in these proceedings and did so for a substantial length of time changes this equation dramatically.  While

26

the State concedes that it knew of Espinoza's death within days of his passing, the State has offered no viable explanation for its decision to withhold that knowledge.  There are certain strategic reasons that might explain the State's desire to withhold information regarding Espinoza's death: so as not to derail the State's then current, but ultimately unsuccessful, attempt to remove the state trial judge from the state proceedings; or so as to allow the fifteen (15) day stay of this Court's Order to expire in the hopes of depriving this Court of jurisdiction to reconsider its order refusing to bar retrial.  There are no reasons of which this Court can conceive, however, that are consistent with the State's prosecutorial obligations.[20]

Against the backdrop of abuse explained in the April 27, 2009 Order and the State's troubling decision not to inform anyone of Espinoza's death once it was informed of it, the Court emphasizes that:

> [The] job [of prosecutors] is not to convict people.  [The] job is not to win cases.  [The] job is to do justice.  [The] job is in every case, every decision that [they] make, to do the right thing.  Anybody who asks [them] to do something other than that is to be ignored.  Any policy that is at tension with that is to be questioned . . . .

Statement of Attorney General Eric Holder (April 8, 2009).  Although, "[t]he overwhelming majority of prosecutors are decent, ethical, honorable lawyers who understand the awesome power they wield, and the responsibility that goes with it," there is a "temptation [that] is always there: It's the easiest thing in the world for people trained in the adversarial ethic to think a prosecutor's job is simply to win." *United*

---

[20] The Court emphasizes that it does not conclude, and does not rely on the conclusion, that the State was aware that Espinoza was close to death prior to his passing.  While there is no doubt the State was aware for some time that Espinoza was seriously ill, D'Ambrosio does not argue, and this Court does not find, that the State delayed his retrial *because* it knew Espinoza would soon die.  Indeed, the State offered to present evidence showing that it was not informed before April 30, 2009 of the critical change in Espinoza's health, but D'Ambrosio conceded this point and the Court accepted the State's proffer of evidence establishing that fact.  D'Ambrosio argues, instead, that the abusive tactics that led to the delay of D'Ambrosio's retrial created the opportunity for the circumstances, and the evidence available to him for his retrial, to change once again.

*States v. Kojayan*, 8 F.3d 1315, 1324 (9th Cir. 1993) (Kozinski, J.).   For whatever reason, the prosecutors in this case have been so misguided.[21]

### b.  Material Prejudice Has Accrued Against D'Ambrosio

In its April 27, 2009 Order, this Court explained that one of the reasons for its decision not to exercise its discretion to bar his reprosecution, was D'Ambrosio's failure to "demonstrate material prejudice from the additional two-month delay" occasioned by the State's failure to comply with the conditional writ.  *D'Ambrosio II*, 619 F. Supp. 2d at 459.  While the fact of the failure to comply with the mandate and the State's improper conduct during and with respect to that delay were important equitable considerations, they were not, standing alone, enough to warrant a reprosecution bar in this case.  *See id.* at 459–60.[22]

Espinoza's death, however, materially alters this Court's prejudice inquiry.  It is difficult to seriously refute the proposition that D'Ambrosio stands in a worse position today than he would have prior to the expiration of the 180-day time limit contained in the conditional writ.  As discussed above, D'Ambrosio has offered numerous specific, credible, and compelling examples of the many ways in which he is prejudiced by Espinoza's death.  While it may seem counterintuitive that the death of the State's sole eyewitness prejudices D'Ambrosio, it is nevertheless true on the unusual facts of this case.  Indeed, that the death of the prosecution's witness can prejudice a defendant is not without precedent.  *See United States v. Fitzgerald*, 615 F. Supp. 2d 1156, 1162 (S.D. Cal. 2009) ("[T]he case [was] a

---

[21] This Court has had the privilege of witnessing many prosecutors – both state and federal – whose pursuit of justice is deserving of, and has earned, the Court's respect.  The overwhelming majority of prosecutors who have appeared before this Court are honorable public servants who take great care to honor the oath they have taken.  This order is not an indictment of prosecutors or their role: it instead addresses a single prosecution that, for unknown reasons, has deviated from appropriate prosecutorial norms.

[22] As previously discussed, another district court has exercised its discretion more aggressively.  *See Pillette*, 2009 U.S. Dist. LEXIS 85521, at *4.  When it granted a Certificate of Appealability on this issue, this Court concluded, as well, that jurists of reason might have found that this Court abused its discretion by *declining* to bar D'Ambrosio's reprosecution on April 27, 2009, even absent substantial prejudice.  (Doc. 250.)

credibility contest between Defendant and [the deceased witness] . . . . Because [the] Defendant has forever lost his opportunity to impeach [the deceased witness] with the withheld evidence, the Court finds a retrial would be substantially prejudicial."); *cf. State v. Larkins*, No. 85877, 2006 Ohio App. LEXIS 80, at *27 (Ohio Ct. App. Jan. 12, 2006) ("[A] retrial of this case would be useless . . . .[T]o conduct a new trial at this stage would be meaningless as [Defendant's] ability to use the exculpatory evidence would be negligible, at best, thus making the retrial itself futile."); *cf. also D'Ambrosio I*, 2006 U.S. Dist. LEXIS 12794, at *70–71 ("During trial . . . the factfinder was charged with either believing Espinoza's or D'Ambrosio's version of the events leading up to Klann's murder.").

Espinoza's death prejudices D'Ambrosio's defense in three highly material ways.  First, and most obviously, D'Ambrosio has always contended that Espinoza murdered Klann, albeit without D'Ambrosio as his accomplice.  *See D'Ambrosio I*, 2006 U.S. Dist. LEXIS 12794, at *70 ("During trial, D'Ambrosio's defense was to blame Espinoza for Klann's murder.").  It would be difficult for D'Ambrosio to credibly inculpate Espinoza without Espinoza's presence and without the ability to impeach him with the substantial evidence withheld by the State in the first trial.  Second, D'Ambrosio has now lost a critical witness who would have limited the State's theory of the case.  For example, one of the most problematic issues in this case concerns the date of the underlying murder: Espinoza alleged that the murder occurred on a Friday night after something called "Tequila Night," although "Tequila Night" occurred on Thursdays, and witnesses at the habeas proceeding testified that Klann was alive on the day after "Tequila Night."  The State now explains:

> In re-interviewing witnesses, I don't think that anyone has affirmatively stated that [the murder was on] Friday night. There may have been one witness who was able to say that she remembers that it was a Friday night, the others said they never really knew which night it was.  So we will be arguing that it may have been Thursday or Friday.

(*Id*. at 31:3–8.)  To a jury unfamiliar with Espinoza's testimony, it would appear quite unremarkable that a murder committed more than 20 years in the past might have occurred on either a Thursday or a Friday, but this point is actually highly material, particularly in light of the *Brady* evidence.  *See*

29

*generally D'Ambrosio I*, 2006 U.S. Dist. LEXIS 12794.  Espinoza was unequivocal, however, with respect to his recollection of the events relating to the murder, including the fact that the murder occurred just after "Tequila Night."  Finally, Espinoza would have helped D'Ambrosio impeach the State's other witnesses.  In light of the many discrepancies between Espinioza's story and the *Brady* evidence, D'Ambrosio may well have been able to use Espinoza to substantially undermine the reasonableness of the investigating detective's reliance on Espinoza's version of events to the exclusion of all others, particularly Espinoza's claim that Klann was killed at Doan Creek when the initial investigating officers had material, evidence-based, reasons to believe otherwise.[23]

The State is, of course, correct that Espinoza's death has some negative impact on their case.  In particular, they now have no eyewitness to put D'Ambrosio at the scene of the crime.  Yet, in light of the *Brady* evidence, the harm to the State is quite muted.  Espinoza's testimony has been revealed to be rife with conflicts and inconsistencies.  *See generally id.*  It is at the very least unclear, and arguably improbable, that a reasonable jury could have given meaningful weight to Espinoza's testimony for the State.[24]  It is more likely, in fact, that the State's heavy reliance on Espinoza's testimony would have backfired for the State.

---

[23] The State argues that D'Ambrosio has a number of other ways to show that the investigation was unreasonable.  Setting aside the degree to which this argument is troubling because it undermines confidence in the investigation, this argument misses the conceptual mark.  The question is not whether D'Ambrosio *might* be able to impeach the State's witnesses without Espinoza, but whether he will be prejudiced in his ability to do so – whether Espinoza's testimony would have increased the likelihood that D'Ambrosio would successfully impeach the State's witness.

[24] This Court's analysis makes an implicit, but critical, assumption: that the State has alternative methods of proof regarding the core issues about which Espinoza would have testified on the State's behalf.  After all, if the State did not, the Court presumes that the State would have voluntarily dismissed its case against D'Ambrosio.  (*Cf.* 10/9/09 Hrg. Tr. at 31:12–16 "THE COURT: [Am I correct that] you are saying essentially [that] the state still intends to pursue the same theory, which was the theory that was designed around Mr. Espinoza's testimony the first time around?  MS. WILLIAMSON: Yes."); *cf. also D'Ambrosio I*, 2006 U.S. Dist. LEXIS 12794, at *70–71 ("During trial . . . the factfinder was charged with either believing Espinoza's or D'Ambrosio's version of the events leading up to Klann's murder.").

30

It can no longer be seriously questioned whether the circumstances at issue here compel the conclusion that an order barring retrial is consistent with the interests of justice.  *See Morales*, 165 F. Supp. 2d at 614–15.  As noted above, the Court's initial decision not to bar retrial was premised on a state of facts that it now knows were not accurate.  First, although the Court mistakenly believed on April 27, 2009 that "there is no evidence of an attempt by the current prosecutors to affirmatively hide evidence . . . ," *id*. at 460, that the State hid Espinoza's death from both this Court and D'Ambrosio for a substantial length of time, perhaps in an attempt to deny either the state court judge or this Court jurisdiction, is all but impossible to justify.  Finally, although it is true that the evidence of D'Ambrosio's innocence is not as compelling as that described in *Morales*, there is also great reason to believe that a reasonable jury would find D'Ambrosio not guilty of the crimes with which he has been charged.[25]  In addition, the Court is now aware that, because the State did not bring D'Ambrosio to trial during the mandate period, a critical witness *who would have been available for trial during that period*, has died.

### c.  Reprosecution Should Not Have Been Permitted

While some cases present difficult questions as to whether *Satterlee's* "extraordinary circumstances" exist, *see Pillette*, 2009 U.S. Dist. LEXIS 85521; *D'Ambrosio II*, 619 F. Supp. 2d 428; *Girts*, 2008 U.S. Dist. LEXIS 108844, in light of Espinoza's death, this case does not.  That the State's inequitable conduct led to material prejudice against D'Ambrosio's ability to defend himself at a new trial shocks the conscience.  Had this Court known of that prejudice on April 27, 2009, it would not have permitted reprosecution to proceed.  The only remaining question is whether the Court can properly rectify that injustice through the operation of Rule 60(b).

---

[25] Significantly, unlike the petitioners in *Scott* and *Eddleman*, there is no confession or guilty plea pointing clearly to D'Ambrosio's guilt.  *See Eddleman*, 586 F.3d at 412; *Scott*, 576 F. Supp. 2d at 835.

### B.  The Court is Authorized to Grant Relief Under Rule 60(b)

#### 1.  The Scope of Rule 60(b)

Rule 60(b) authorizes extraordinary relief, but only of a particular type.  Under this rule, a court only has the power to vacate a prior judgment: a court may not avail itself of Rule 60(b) to grant "affirmative relief in addition to the relief contained in the prior order or judgment."  *Delay v. Gordon*, 475 F.3d 1039, 1044 (9th Cir. 2007); *see also Adduono v. World Hockey Ass'n*, 824 F.2d 617, 620 (8th Cir. 1987).  This obviously does not mean that, having vacated the prior judgment under Rule 60(b), a district court may do nothing else at all.  Rather, the case is returned to the procedural posture in which it existed prior to a court's entry of judgment.  A district court may, moreover, enter a new judgment in the same order in which the court vacates the old.  *See Schanen v. United States Dep't of Justice*, 798 F.2d 348, 350 (9th Cir. 1986); *Conerly v. Flower*, 410 F.2d 941, 944 (8th Cir. 1969); *cf.* 12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 60.68 (3rd ed. 2009) ("The grant of a [60(b)] motion is appealable when the court not only relieves a party of judgment, but *enters a corrected judgment* so that there is nothing further to be decided by the district court." (emphasis added)).

The State's first procedural objection, that D'Ambrosio seeks relief beyond vacating the Court's prior judgment, is ultimately straightforward to resolve.  It appears that the State simply misunderstands the relief D'Ambrosio is seeking.  D'Ambrosio has not asked this Court to bar reprosecution through the operation of Rule 60(b) itself.  Rather, he asks the Court to vacate its previous judgment declining to bar his retrial and then, *in a separate step*, to enter a new judgment that reaches the opposite conclusion. The State's confusion likely stemmed from the fact that, in this case, the substantive grounds for vacating the Court's prior order are essentially the same as the substantive grounds for barring D'Ambrosio's reprosecution.  This notwithstanding, they are distinct procedural steps.  *See Schanen*, 798 F.2d at 350.

32

### 2.  D'Ambrosio's Motion is Not an Unexhausted Claim

The State also argues that D'Ambrosio's claim fails because he has not yet exhausted claims relating to Espinoza's death in state court.  It is well established, after all, that no habeas petitioner, even when employing Rule 60, may obtain relief unless he has completely exhausted his available state remedies.  *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) (citation omitted).[26]  It hardly need be stated, however, that the concept of exhaustion only applies when there is some state claim to exhaust, and D'Ambrosio is not asking this Court to consider any such question.  D'Ambrosio does not, for example, ask this Court to declare that the State violated *Brady* by failing to tell him about Espinoza's death in a more timely fashion, nor does D'Ambrosio argue that Espinoza's death, in conjunction with the destruction of myriad additional evidence, would render any retrial constitutionally deficient.  Instead, D'Ambrosio asks this Court to reopen its judgment regarding the State's motion for an extension of time and conclude that, because Espinoza's death occurred while D'Ambrosio's retrial was being delayed, the State's inexcusable non-compliance with this Court's order prejudiced D'Ambrosio.  The question before the Court is simply whether, in light of the State's failure to comply with the conditional writ of habeas corpus, this Court should bar reprosecution.  The concept of "exhaustion" has no role to play here, because the question before the Court concerns the State's non-compliance with a federal court's order.[27]

---

[26] To satisfy the exhaustion requirement, a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  The exhaustion requirement is satisfied when the highest court in the state has been given a full and fair opportunity to rule on the petitioner's claims.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994) (citation omitted).

[27] The State makes the argument that the state trial court should have the opportunity to evaluate the impact of Espinoza's death.  Of course, that court could obviously consider the impact of Espinoza's death on its proceedings and might, if presented with the question, even conclude that the trial should not proceed.  *See Larkins*, 2006 Ohio App. LEXIS 80, at *27.  That the answer to this question would turn on many of the same substantive issues considered by this Court today, however, does not alter the fact that D'Ambrosio is only asking this Court to consider its own prior ruling, and that this Court has

### 3.  D'Ambrosio's Motion is Not A Second or Successive Habeas Petition

As discussed above, the State also argues that D'Ambrosio's motion is an improper second or successive habeas petition.  Again, however, the State misunderstands the law.

An *unsuccessful* habeas petitioner usually may not avail himself of Rule 60(b) to attack the substance of a district court's prior ruling, because such a motion is treated as a second or successive habeas petition and subject to strict procedural requirements.  *Gonzales v. Crosby*, 535 U.S. 524, 532 (2005) ("[A]lleging that the court erred in denying habeas  relief on the merits is effectively indistinguishable from alleging that the movant is, under the  substantive provisions of the statutes, entitled to habeas relief.").  A *successful* habeas petitioner, however, is subject to no such constraints.  *Id*. at 538 ("[A] Rule 60(b)(6) motion in a § 2254 case is not to be treated as a successive habeas petition if it does not assert, or reassert, claims of error in the movant's state conviction."); *Post v. Bradshaw*, 422 F.3d 419, 422 (6th Cir. 2005) ("[I]f neither the [Rule 60(b)] motion itself nor the federal judgment from which it seeks relief substantively addresses federal grounds for setting aside the movant's state conviction, allowing the motion to proceed as denominated creates no inconsistency with the habeas statute or rules." (quoting *Gonzales*, 535 U.S. at 533)).  In other words, the doctrine may only come into play when a habeas petitioner seeks to challenge his state court conviction.  D'Ambrosio, however, *has no state court conviction to challenge*.  This doctrine simply does not apply.

### 4.  The Court Grants Relief Under Rule 60(b)(6)

It is well-established that a district court may vacate a previously entered judgment disposing of a habeas petition.  *See* Fed. R. Civ. P 60(b); *Gonzales*, 535 U.S. at 534 ("Rule 60(b) has an unquestionably valid role to play in habeas cases."); *Thompson v. Bell*, 580 F.3d 423, 444 (6th Cir. 2009) ("Rule 60(b) 'confers broad discretion on the trial court to grant relief when appropriate to

---

the jurisdiction to do so, regardless of its faith in the state court's ability to also address the concerns D'Ambrosio raises.

accomplish justice; it constitutes a grand reservoir of equitable power to do justice in a particular case . . . and should be liberally construed when substantial justice will thus be served.'" (quoting *Matarese v. Lefevre*, 801 F.2d 98, 106 (2d Cir. 1986))).   Rule 60(b) authorizes relief from judgment under five enumerated circumstances, as well as a "catchall":

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  As previously discussed, it is the "catchall," Rule 60(b)(6), that is at issue here.[28]

---

[28] Although D'Ambrosio asserts that the Court could also properly grant relief under Rule 60(b)(2) or Rule 60(b)(5), the law is otherwise.  Rule 60(b)(2) only applies to evidence that existed "at the time of trial," and is thus inapplicable with respect to the issue of Espinoza's death, which occurred after D'Ambrosio's trial.  Although some courts have interpreted Rule 60(b)(2) to apply to evidence that existed at the time of judgment, *see Boxill v. Brooklyn College*, No. CV-96-561, 2003 U.S. Dist. LEXIS 11762, at *12–13 (E.D.N.Y. July 10, 2003) (citing *Johnson v. Askin Capital Mgmt., L.P.*, 202 F.R.D. 112, 114 (S.D.N.Y. 2001)), the Sixth Circuit has directed its courts to hew closely to the text of Rule 60(b)(2) itself.  *See Nat'l Union Fire Ins. Co. v. Alticor, Inc.*, No. 05-2479, 2007 U.S. App. LEXIS 22585, at *21 (6th Cir. Sept. 19, 2007) ("This circuit follows the 'well-conceived rule that newly discovered evidence for motions under . . . Rule 60(b)(2) must pertain to evidence which existed at the time of trial.'" (quoting *Davis v. Jellico Community Hosp., Inc.*, 912 F.2d 129, 135 (6th Cir. 1990)) (emphasis added)).

Rule 60(b)(5), for its part, does not apply because the Court is not engaged in any type of ongoing supervision of the parties.  *See Kalamazoo River Study Group v. Rockwell Int'l Corp.*, 355 F.3d 574, 587 (6th Cir. 2004) ("The mere possibility that a judgment has some future effect does not mean that it is 'prospective' because virtually every court order causes at least some reverberations into the future, and has . . . some prospective effect.  The essential inquiry into the prospective nature of a judgment revolves around whether it is executory or involves the supervision of changing conduct or conditions." (citations omitted) (internal quotations omitted)); *cf. Doe v. Briley*, 562 F.3d 777, 780 (6th Cir. 2009) ("Injunctions (permanent or temporary), some declaratory judgments, and particularly

The catchall, "Rule 60(b)(6)[,] provides courts with broad equitable power, [although] that power is tempered by a stringent standard required to exercise [it]." *Thompson v. THI of N.M. at Casa Arena*, No. CIV 05-1331, 2009 U.S. Dist. LEXIS 94617, at *8–9 (D.N.M. Aug. 28, 2009) (citing *Servants of the Paraclete v. Doe*, 204 F.3d 1005, 1009 (10th Cir. 2000)).  Rule 60(b)(6) applies "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule."  *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990) (quoting *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989)); *see also Ford Motor Co. v. Mustangs Unlimited, Inc.*, 487 F.3d 465, 468 (6th Cir. 2007) (collecting cases holding same); *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993) ("Rule 60(b)(6) has been used sparingly as an equitable remedy to prevent manifest injustice.  The rule is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment.").  The Sixth Circuit has nevertheless made clear that, when truly extraordinary circumstances are present, a district court has considerable equitable powers under this rule.  *Thompson*, 580 F.3d at 444; *Gumble v. Waterford Twp.*, 171 Fed. Appx. 502, 505 (6th Cir. 2006) ("Where a party seeks relief under Rule 60(b)(6), the district court's discretion 'is especially broad given the underlying equitable principles involved.'" (quoting *Johnson v. Dellatifa*, 357 F.3d 539, 543 (6th Cir. 2004))); *McDowell v. Dynamics Corp. of Am.*, 931 F.2d 380, 383 (6th Cir. 1991) (finding same and citing *Hopper*, 867 F.2d at 294).

Given that Espinoza's death was an extraordinary circumstance justifying relief on April 27, 2009 and that relief is conceptually appropriate under Rule 60(b), relief under Rule 60(b)(6) is *necessarily* proper.  This is so because the "extraordinary circumstances" of *Satterlee* are certainly no

---

consent decrees are prospective judgments susceptible to a Rule 60(b)(5) challenge.").  The Court notes that this rule might well have been appropriate prior to the State's compliance with the unconditional writ.

easier to meet than the "extraordinary circumstances" necessary under Rule 60(b)(6) to reopen judgment.  Indeed, the State implicitly concedes as much:

> The Court:  [In your briefing,] you don't even address 60(b)(5) or 60(b)(6).  Do you want to address those now?
>
> Ms. Williamson:  [A]s far as extraordinary relief or extraordinary . . . circumstances that would require the Court to reopen the habeas to grant them additional affirmative relief, I don't think we are there yet . . . . [E]xtraordinary circumstances don't exist because the trial court has dealt with this issue [by excluding Espinoza's prior testimony].

(10/9/09 Hrg. Tr. at 46:23–47:19.)  In other words, the State argued that Rule 60(b)(6) did not apply for precisely the same reason it argued that relief would have been improper on April 27, 2009.  It follows, then, that in light of this Court's determination that it would have granted relief on April 27, 2009 had it known of Espinoza's death, the grant of equitable relief under Rule 60(b)(6) is appropriate in this case.

## IV.    CONCLUSION

For the foregoing reasons, D'Ambrosio's Motion for Relief from Judgment (Doc. 251) is **GRANTED** under Rule 60(b)(6).  The Court hereby **VACATES** that portion of its April 27, 2009 Judgment (Doc. 243) declining to bar D'Ambrosio's reprosecution.  Accordingly, the now-unresolved portion of the State's Motion for an Extension of Time (Doc. 211) is ripe for adjudication.  For the reasons articulated in its April 27, 2009 Memorandum and Order, the Court **DENIES** that motion (Doc. 211) and, for the reasons articulated here, now **BARS** any attempt to reprosecute D'Ambrosio.


**IT IS SO ORDERED.**

                                        **s/Kathleen M. O'Malley**
                                        **KATHLEEN McDONALD O'MALLEY**
                                        **UNITED STATES DISTRICT JUDGE**


**Dated: March 3, 2010**